UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| National Casualty Company and Nationwide Mutual Insurance Company, *Plaintiffs*, v. Continental Insurance Company, *Defendant*. | No. 23 CV 3143 Judge Lindsay C. Jenkins |

**ORDER**

Before the Court is Plaintiffs National Casualty Company ("National Casualty") and Nationwide Mutual Insurance Company's ("Nationwide" collectively, the "Reinsurers") motion to stay arbitration. [Dkt. 4.] Defendant Continental Insurance Company ("CNA") has filed a cross-motion to compel arbitration and to dismiss. [Dkt. 16.] For the reasons given below, the Court grants CNA's motion to compel arbitration and denies the Reinsurers' motion to stay arbitration.

*Background*

This lawsuit arises from three reinsurance agreements between CNA, an insurance company, and its reinsurers, National Casualty and Nationwide ("Reinsurance Agreements"). The Reinsurance Agreements at issue were in effect at different times between January 1, 1969 and December 31, 1975. [Dkts. 5 at 3; 20 at 9.][1] Each Reinsurance Agreement contains nearly identical arbitration clauses that provided as follows:

> If any dispute shall arise between the Reassured [CNA] and the Reinsurers [National Casualty and Nationwide] with reference to the interpretation of this Contract or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Contract, such dispute, upon the written request of either party, shall be submitted to three arbitrators.

[Dkt. 20 at 31, 50, 71, 99.] The arbitration clauses declare that an arbitration "shall be final and binding on both parties." [*Id.*]

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

In 2017, a dispute arose concerning certain changes to CNA's billing methodology and, more specifically, whether the new billing methodology was permitted under the "Loss Occurrence" definition set forth in the Reinsurance Agreements. [*Id.*, ¶¶ 10–11.] Pursuant to the arbitration clauses contained in the Reinsurance Agreements, CNA initiated separate arbitration proceedings against National Casualty and Nationwide (the "2017 Arbitrations"). [*Id.*, ¶ 12; Dkt. 16 at 2.] First, CNA arbitrated with Nationwide and received a final order in March 2017; shortly thereafter, CNA arbitrated with National Casualty and received a final order in August 2017. [Dkt. 20, ¶¶ 13–14, 18–19.] The two arbitration awards were subsequently confirmed by courts in the Northern District of Illinois (the "2017 Awards"). [*Id.*, ¶¶ 16–17, 21–22.]

The parties' current dispute revolves around the same provisions in the Reinsurance Agreements that were the subject of the 2017 Arbitrations. [*Id.*, ¶ 23.] According to CNA, CNA issued billings to National Casualty and Nationwide, who refused to pay, asserting that the billings were not permissible under the "Loss Occurrence" definition. [Dkt. 16 at 2.] The parties discussed the billings but failed to reach a consensus on the interpretation of "Loss Occurrence." [*Id.*] On February 16, 2023, CNA demanded arbitration in two separate proceedings, one against National Casualty and the other against Nationwide for the unpaid billings (the "New Arbitrations.") [*Id.*]

Following the demand for arbitration, National Casualty and Nationwide initiated this suit for declaratory and injunctive relief, seeking to preclude CNA from attempting to re-arbitrate the final decisions of the 2017 Arbitrations, and seeking to enjoin CNA from attempting to pursue another arbitration arising from the same issues in the future. [Dkts. 5 at 5; 20, ¶¶ 6, 27–37.] National Casualty and Nationwide have moved to stay the New Arbitration proceedings initiated by CNA and seek to litigate their issue preclusion argument before this Court. [Dkts. 4; 5 at 6.] CNA opposes staying the New Arbitration proceedings and has moved to compel arbitration and to dismiss the case. [Dkt. 16.]

*Legal Standard*

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, governs when courts must compel arbitration. Section 2 of the FAA provides that any written contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2.

The FAA "mandates enforcement of valid, written arbitration agreements," *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002), and "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Commc'ns, LLC,* 666 F.3d 1027,

2

1032 (7th Cir. 2012) (citation and internal quotation marks omitted). Where an arbitration clause is broad, disputes are presumed arbitrable. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). But "because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Gore*, 666 F.3d at 1032 (citation and internal quotation marks omitted).

Accordingly, Courts should compel arbitration only "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

*Motion to Compel Arbitration*

Both parties recognize that there are valid arbitration clauses within the operative Reinsurance Agreements. [*See* Dkt. 20, ¶ 9; 16 at 2; 22 at 19–20.] It is also undisputed that the parties consented to broad arbitration provisions, which mandate that arbitrators must resolve any dispute concerning the interpretation of the Reinsurance Agreements or their rights with respect to any transaction. [Dkt. 20 at 31, 50, 71, 99.]

The issue before the Court is a narrow inquiry into the arbitration clause's scope: whether a dispute over the preclusive effect of a prior arbitration is arbitrable. More specifically, when a federal court order confirms an arbitration award, is the preclusive effect of that award on a subsequent arbitration a matter for the court or the arbitrator to decide?

The Reinsurers argue that CNA's new claims are a rehash of the improper billings and arguments from the 2017 Arbitrations, which resolved in favor of the Reinsurers and was confirmed by federal court orders. [Dkt. 5 at 1, 5, 7.] While conceding that the arbitration clauses mandated the 2017 Arbitrations, the Reinsurers assert that the clauses "do not commit Plaintiffs to serially re-arbitrate" the same previously decided issues.[2] [Dkt. 22 at 19–20.] The Reinsurers also argue that because courts confirmed the 2017 Awards, the Court, not an arbitrator, must adjudicate the "threshold question" of whether the parties agreed to "re-arbitrate issues previously decided and accorded fully preclusive effect by the final judgment" of the court. [Dkts. 5 at 6, 7; 22 at 10, 12–18, 20.] According to the Reinsurers, they did not agree to arbitrate the preclusive effect of a prior arbitral award, and the

---

[2] The Reinsurers admit that the 2017 Awards did not determine or dictate how billings must be presented under the reinsurance agreements, nor did they prevent CNA from modifying its billing method in the future. [Dkt. 22 at 9.] Rather, the Reinsurers argue that the 2017 Awards prohibit CNA from presenting billings as "a single loss occurrence" under the Reinsurance Agreements, and this ruling is not "dependent on or limited to the specific facts of the particular claims addressed in those confirmed awards." [*Id.*]

3

arbitration clause does not "clearly and unmistakably" manifest an intent to do so. [Dkt. 22 at 11–12.]

CNA, on the other hand, argues it does not seek to "attack or overturn" the 2017 Awards. [Dkt. 16 at 3.] According to CNA, the New Arbitrations are "entirely separate and distinct" from the 2017 Arbitrations, involving different policyholders, claims, and facts.[3] [*Id.*] CNA argues that to the extent the Reinsurers seek to raise the 2017 Awards as a defense, "that matter is subject to the parties' binding arbitration agreement." [*Id.*]

There is a narrow exception to the presumption of arbitration for a "question of arbitrability"—that is, "whether parties have submitted a particular dispute to arbitration." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002). But this exception is limited in scope to "the kind of narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter." *Id.* at 84–85. Examples of questions that a court should resolve include, "whether the arbitration contract bound parties who did not sign the agreement," "whether an arbitration agreement survived a corporate merger and bound the resulting corporation," and "whether an arbitration clause . . . applies to a particular type of controversy." *Id.* at 83–84. It is not "applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter." *Id.* at 83. Procedural questions that grow out of the dispute and bear on its final disposition—such as issues of waiver, delay, defenses to arbitrability, time limits, notice, laches, estoppel, and conditions precedent for arbitration—are matters for an arbitrator to decide. *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006) (citing *Howsam*, 537 U.S. at 83); *see Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.")

It is well settled in the Seventh Circuit, and other circuits, too, that the preclusive effect of a prior arbitral award—whether or not confirmed by a court—is a defense subject to arbitration. *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 631 F.3d 869, 874 (7th Cir. 2011) ("Arbitrators are entitled to decide for themselves those procedural questions that arise on the way to a final disposition, including the preclusive effect (if any) of an earlier award."); *Consolidation Coal Co. v. United Mine Workers of Am.*, 213 F.3d 404, 407 (7th Cir. 2000) (stating, "the question of the preclusive force of the first arbitration is, like any other defense, itself an issue for a

---

[3] The Reinsurers do not dispute that the present claims pertain to different policyholders than those involved in the 2017 Arbitrations. [Dkt. 22 at 3.]

subsequent arbitrator to decide."); *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968 (7th Cir. 2000) (noting that it is "well-established that 'the preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider.'" (quoting *Bhd. of Maint. of Way Emps. v. Burlington N.R.R. Co.*, 24 F.3d 937, 940 (7th Cir.1994))).

As discussed above, a question of arbitrability does not include procedural defenses. *Howsam*, 537 U.S. 79 at 84–85. Cloaked as a "threshold question of arbitrability," the Reinsurers ask the Court to disregard well-established law, and to determine the preclusive effect of the 2017 Awards on the New Arbitrations. But deciding that question would require the Court to inappropriately delve into the merits of the claims, assessing the presence of all prerequisites for collateral estoppel. This the Court cannot do. *See Zurich Am. Ins. Co.*, 466 F.3d at 580 (holding that in determining a request to compel arbitration, the court's duty is to determine whether the parties' grievance belongs in arbitration, not rule on the potential merits of the underlying dispute between the parties); *Prod. & Maint. Emps. Local 504 v. Roadmaster Corp.*, 916 F.2d 1161, 1162 (7th Cir. 1990) ("Whether more than one arbitrator can take a crack at interpreting the contract is itself a question of contractual interpretation. . . . Arbitrators frequently interpret the scope and binding effect of earlier arbitral decisions."); *see also Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 131 (2d Cir. 2015) (explaining that preclusion is not a question of arbitrability because like other affirmative defenses, it is a legal defense to the opposing party's claims and is "itself a component of the dispute on the merits."). Any dispute—whether old or new—concerning "the interpretation of [the parties'] Contract or their rights with respect to any transaction involved" is subject to arbitration. [Dkt. 20 at 31, 50, 71, 99.] It will be for an arbitration panel to determine what impact, if any, the 2017 Awards have on the current and future disputes.

Without citation to any supporting caselaw, the Reinsurers assert that Section 13 of the FAA dictates that courts must adjudicate the preclusive effect of an arbitration award that has been confirmed by a court pursuant to Section 9 of the FAA, such as the 2017 Awards in this case. [Dkt. 22 at 14–17.] The Court has not identified any Seventh Circuit caselaw squarely addressing this argument. But both the First Circuit and the Ninth Circuit have rejected the argument that the confirmation of an earlier arbitration award confers authority upon a federal court to consider a *res judicata* defense in subsequent legal proceedings. *Emps. Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25, 28–29 (1st Cir. 2014) (reasoning that because a federal judgment confirming an arbitration award "does not address the steps leading to the decision on the merits," there is "no reason why that [judgment] should give the federal court the exclusive power to determine the preclusive effect of the arbitration"); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1133–34 (9th Cir. 2000) (reasoning that the policy underlying vesting district courts with

authority to determine the claim–preclusive effect of their own judgments "is not served . . . when the district court merely confirmed the decision issued by another entity, the arbitrator, and was not uniquely qualified to ascertain [the] scope and preclusive effect" of that decision). Given these holdings, together with the lack of any caselaw citation to the contrary, the fact that the 2017 Arbitrations were subsequently confirmed by a court does not warrant "deviat[ing] [ ] from the general rule that the preclusive effect of a prior arbitration is an arbitrable issue." *Emps. Ins. Co. of Wausau*, 744 F.3d at 29; *Emps. Ins. of Wausau v. Cont'l Cas. Co.*, 2016 WL 632642, at *2–3 (W.D. Wis. Feb. 17, 2016) (rejecting the argument that the court was the proper forum to decide if CNA was improperly "rebilling" plaintiffs in violation of a court confirmed arbitration decision.)

The Reinsurers' final argument is that "[a]t the time the agreements at issue were entered into, the established law did not hold that the preclusive effect of a federal judgment was for arbitrators to decide." [Dkt. 22 at 13.] But the cases the Reinsurers cite fail to support this assertion. They either do not consider the question of whether courts or an arbitrator should decide the preclusive effect of a prior arbitration award on subsequent arbitrations, *see, e.g.*, *Brown v. Bridgeport Rolling Mills Co.*, 245 F. Supp. 41 (D. Conn. 1965) (considering the preclusive effect of a court judgment that had denied a motion to vacate an arbitration award); or are irrelevant because arbitration was not an option in the subsequent proceedings, *see, e.g.*, *Allessandrini v. Am. Fed'n of Musicians of the U.S. and Can.*, 439 F.2d 699 (2d Cir. 1971) (considering the preclusive effect of a prior arbitration on subsequent court litigation).

The Court agrees with CNA that the preclusive effect of the 2017 Awards on the current proceedings or on future arbitrations is within the scope of the arbitration clauses. An arbitrator must decide what, if any, effect the prior awards have on the parties' disputes. Accordingly, CNA's motion to compel arbitration is granted.

*Stay Claim or Dismiss*

Having granted the motion to compel arbitration, the remaining issue is whether the Court should dismiss or stay the action. [Dkts. 4, 5, 16, 21, 22.][4] The FAA instructs that once a court is satisfied that an issue is arbitrable, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. For this reason, the Seventh Circuit generally counsels to "stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (citations omitted). But where the entire dispute clearly will be decided in arbitration, there is no reason to hold on to the case. *Johnson v. Orkin*,

---

[4] The Reinsurers do not urge the Court to stay this action in the event it granted the motion to compel arbitration. [Dkt. 22.]

6

*LLC*, 928 F. Supp. 2d 989, 1008–09 (N.D. Ill. Mar. 6, 2013) (describing "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration") (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011))). Although the Seventh Circuit has not outright approved of this approach, it has repeatedly affirmed dismissals where all claims are arbitrable. *See, e.g., Wallace v. Grubhub Holdings Inc.*, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019), *aff'd*, 970 F.3d 798 (7th. Cir. 2020); *Johnson*, 928 F. Supp. 2d at 1008, *aff''d*, 556 F. App'x 543 (7th Cir. 2014); *Baumann v. Finish Line, Inc.*, 2009 WL 2750094, at *3 (S.D. Ind. Aug. 26, 2009), *aff'd*, 421 F. App'x 632 (7th Cir. 2011).

Here, the amended complaint seeks a declaratory judgment and injunctive relief with respect to the parties' respective rights and obligations under the Final Awards and Judgments. [Dkt. 20.] Because the Court has concluded that all the claims are subject to arbitration, there is no matter "for the court to decide unless and until a party seeks confirmation of or challenges the arbitrators' award." *Employers Ins. of Wausau*, 2016 WL 632642, at *3. Under the circumstances, a dismissal without prejudice, rather than a stay, is warranted.

## *Conclusion*

For the reason stated above, Plaintiffs National Casualty and Nationwide's motion to stay arbitration [Dkt. 4] is denied, and Defendant CNA's motion to compel arbitration and motion to dismiss is granted. [Dkt. 16.] The matter is dismissed without prejudice.

Enter: 23 CV 3143
Date: November 15, 2023

_____
Lindsay C. Jenkins
United States District Judge

7